**In re Thomas F. EDWARDS, Debtor.**

**Bankruptcy No. 93–07058.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Feb. 20, 1997.

W. Kirk Brown, Tallahassee, FL, for Debtor.

Leigh Hart, Trustee, Tallahassee, FL.

### ORDER GRANTING DEBTOR'S MOTION FOR HARDSHIP DISCHARGE

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the motion of the Chapter 13 debtor for a hardship discharge pursuant to the provisions 11 U.S.C. § 1328(b). The standing Chapter 13 trustee objects to the granting of the discharge on the grounds that the debtor does not meet the requirements for granting such a discharge. Having considered the entire file in this case, the testimony of the debtor, arguments of counsel, and pertinent

---

authorities, I make the following findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

The debtor filed this Chapter 13 on February 5, 1993 and proposed a repayment plan under which he would make payments to the trustee in the amount of $1,419.37 over a 36 month period for a total in payments to the trustee of $51,097.32. The plan was confirmed on June 10, 1993. At the time he filed his Chapter 13, the debtor derived his income through his ownership in operation of a business known as Film Town Stores, Inc. He had this business for ten years at the time his petition was filed and the majority of the claims listed in the schedules arose from the operation of the business.

Following confirmation of the plan, the case proceeded uneventfully until January 31, 1995 when the holder of the mortgage on the debtor's homestead filed a motion for relief from stay based on missed payments. This motion was consented to by the debtor and on February 8, 1995, the debtor filed a first amended plan to reflect the loss of his homestead and providing for any deficiency resulting from the foreclosure to be treated as a general unsecured debt. The debtor then fell behind in his payments under the plan and on April 24, 1995, the trustee filed a motion to dismiss. This motion was resolved on June 7, 1995 by the entry of a strict compliance order reflecting that the debtor at that time was only one month delinquent in his payments. The debtor kept his payments current thereafter through October 27, 1995 at which time he could no longer make payments. On February 7, 1996, the trustee filed a notice of default under the terms of this strict compliance order and requested dismissal of the case.

On February 8, 1996, the debtor filed a motion for an extension of time to complete the payments called for under his Chapter 13 plan. At the time of the motion, the debtor had made 30 payments for a total of $39,-742.36 and had only six payments remaining. The basis for the motion was that the debtor's business had recently failed and he was in the process of seeking employment which would enable him to make the six remaining payments. The debtor requested a period of up to 18 months in which to complete the payments. Since his original plan called for a term of 36 months, this 18 month extension would still allow him to complete payments within the maximum period of 60 months permitted in 11 U.S.C. § 1322(c). On October 11, 1996, the debtor requested an additional extension of time to begin making the deferred payments based on his continued inability to make those payments. At that time, he had obtained employment, however that job was in sales and he was not making sufficient income to resume making the required plan payments. On December 20, 1996, being unable to make any more payments under the plan, the debtor filed the instant motion for hardship discharge.

At hearing on the motion, the debtor testified that his film business which had been successful for a number of years deteriorated after his Chapter 13 plan was confirmed due to increased competition in the market. He was close to consummating a sale of the business in the face of a foreclosure on the assets by the bank when the bank refused to approve the sale and concluded its foreclosure. Following the loss of his business, the debtor suffered depression requiring medication and also suffered the breakup of his marriage. He searched extensively for employment but was unable to secure a job with sufficient income to make his plan payments. He finally obtained employment as a commissioned salesman for a local television station and has made approximately $1,500.00 per month for the last several months. This level of income leaves him with no disposable income with which to make any plan payments.

Section 1328(b) provides the authority for a hardship discharge as follows:

> At any time after the confirmation of the plan and after notice and hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under Chapter 7 of this title on such date; and

(3) modification of the plan under § 1329 of this title is not practicable.

In this case, the trustee stipulates that the debtor meets the requirements of subsection (2). The debtor has twice attempted to gain additional time to make the payments by extending the payment period, but has been unable to fund any payments. The debtor's testimony that he has no disposable income establishes that modification of the plan is not practicable. The bone of contention is whether or not the debtor meets the requirement of subsection (1) that his failure to complete the payments is due to circumstances for which he should not justly be held accountable.

In arguing that the debtor's circumstances do not justify the granting of the hardship discharge, the trustee cites the case of *In re Nelson*, 135 B.R. 304 (N.D.Ill.1991) or the proposition that most courts will approve a request for hardship discharge only in the presence of "catastrophic circumstances". That case, cites to a leading authority on Chapter 13 cases as suggesting that circumstances which would justify hardship discharge have to be the "truly worst of the awfuls to have something more than just the temporary loss of a job or temporary physical ability." *Id.* at 307, citing K. Lundin, *Chapter 13 bankruptcy*, § 9.8 at 9–26 (1990). In that case, however, the court pointed out that the economic events leading to the failure of the Chapter 13 plan began before the Chapter 13 was filed and continued early during the period following confirmation of the plan but were not brought to the court's attention until several years later.

Having reviewed the few reported cases discussing the grounds for granting a hardship discharge, I recognize that those few bankruptcy courts directly addressing the issue have imposed a very difficult standard to meet under § 1328(b)(1). However, in reviewing those cases, I am unable to discern where a requirement for some "catastrophic circumstances" or the "worst of the awfuls" is a standard to be met to show that the failure is due to circumstances for which the debtor should not justly be held accountable. The case of *In re Dark*, 87 B.R. 497 (Bankr. N.D.Ohio 1988) cited in *In re Nelson* does not stand for the proposition that catastrophic circumstances are required to justify a hardship discharge. In *Dark*, the hardship discharge was denied because the debtor failed to satisfy the requirement of § 1328(b)(2). Regarding the debtor's evidence under § 1328(b)(1), the court held that "unsubstantiated and conclusory statements regarding an inability to fund a plan are insufficient". *Id.* at 498. The court in *In re White*, 126 B.R. 542 (Bankr.N.D.Ill.1991) made reference to a requirement for catastrophic circumstances to justify a hardship discharge, but did not elaborate. I have been unable to find any appellate court decisions which address the issue.

■ I am unable to conclude that the law requires a debtor seeking a hardship discharge under § 1328(b) must demonstrate the existence of catastrophic circumstances, notwithstanding the views of my colleagues in other courts. First, I do not believe that the language of § 1328(b)(1) requires such a standard. Secondly, given the requirement of § 1328(b)(2) that unsecured creditors have received at least that which they would have received in a liquidation under Chapter 7, and the limited extent of a discharge received under § 1328(b), I can find no justification for exacting such a standard. Unlike the "super discharge" provided to debtors pursuant to § 1328(a) upon completion of all payments under a plan, the hardship discharge under § 1328(b) is the same discharge received under Chapter 7 with all of the exceptions the discharge specified in § 523(a). 11 U.S.C. § 1328(c), *In re Thornton*, 21 B.R. 462 (Bankr.W.D.Va.1982). To deny a debtor who has made every effort to comply with a Chapter 13 plan the benefits of any discharge in bankruptcy when, despite his best efforts, economic circumstances prevent him from completing his payments would punish that debtor for attempting to repay his creditors under Chapter 13 in the first place.

Where a debtor is unable to complete payments under a Chapter 13 plan due to economic circumstances that did not exist nor were foreseeable at the time of confirmation of the plan, where those circumstances are beyond the debtor's control, and where the debtor has made every effort to overcome those circumstances but is unable to complete his plan payments, then I think the requirement of § 1328(b)(1) has been met. If the other subsections of § 1328(b) have also been met, then, the debtor may receive a discharge. In this case, I find that the debtor has in fact met all of the requirements of § 1328(b), and accordingly his motion for a hardship discharge will be granted.

Pursuant to Fed.R.Bankr.P. 4007(d), the court is required to enter an order setting a date for creditors to file complaints to determine the dischargeability of any debt pursuant to § 523(c) since the discharge to be granted hereunder does not encompass those debts excepted from discharge pursuant to § 523(a). Accordingly, the court will enter an order setting a bar date for filing such complaints, and entry of the debtor's discharge will be deferred until the date for filing such complaints has passed.

Separate orders will be entered in accordance herewith.