**In re Betty L. NICHOLS, Debtor.**

No. 01–10603.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 14, 2004.

John W. Rose, Cincinnati, OH, for Debtor.

Thomas J. Geygan, Sr., Cincinnati, OH, Chapter 7 Trustee.

Gregory A. Stout, Cincinnati, OH, for Thomas J. Geygan, Sr.

Margaret A. Burks, Cincinnati, OH, Chapter 13 Trustee.

### ORDER DENYING TRUSTEE'S MOTION FOR TURNOVER OF 1999 OLDS BRAVADA

J. VINCENT AUG, JR., Bankruptcy Judge.

This matter is before the Court on the Chapter 7 Trustee's Motion for Turnover of 1999 Olds Bravada (Doc. 62), the Debtor's objection thereto (Doc. 64), the parties' briefs (Docs. 66, 68) and the Chapter 13 Trustee's Memorandum (Doc. 71). A hearing was held on November 16, 2004.

This chapter 7 case previously existed as a chapter 13 but was converted to a chapter 7. The issue before the Court is whether equity in collateral which accrues as a secured claim is paid during the course of a chapter 13 case, becomes property of the debtor or property of the debtor's estate and payable to the unsecured creditors by the chapter 7 trustee following the conversion to chapter 7.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The Debtor filed her chapter 13 petition on February 2, 2001. In her chapter 13 schedules, the Debtor listed a 1999 Olds Bravada with a value of $19,000 and a debt of $29,917.21. There was no equity in the Bravada at the time the chapter 13 petition and plan were filed. During the time Debtor was making payments on her chapter 13 plan, the secured portion of the debt on the Bravada was paid in full. The Debtor converted her case to one under chapter 7 on September 2, 2004. The Chapter 7 Trustee asserts that the vehicle has substantial equity which the trustee now wants to realize for the chapter 7 unsecured creditors.

11 U.S.C. § 348(f) is the applicable statute and states:

(f)(1) … when a case under chapter 13 of this title is converted to a case under another chapter under this title-

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

Pursuant to 11 U.S.C. § 541, property of the estate is comprised of all legal or equitable interest of the Debtor in property as of the commencement of the case. Further, § 541(6) indicates that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

The Debtor contends that the payments she made under the chapter 13 plan were made from her post-petition earnings and that the resulting equity in the Bravada should not be considered property of the estate. The Chapter 7 Trustee contends that the Bravada itself is clearly property of the estate, the value of which can be

realized for the benefit of the unsecured creditors.

There is a split in the case law and both parties can find support for their respective positions. *Compare In re Peter,* 309 B.R. 792 (Bankr.D.Or.2004) (nonexempt equity resulting from debtor's pay down of secured claim while in chapter 13 included in chapter 7 estate) and *In re Wegner,* 243 B.R. 731 (Bankr.D.Neb.2000) ($2,100 equity resulting from debtor's payments during chapter 13 included in the chapter 7 estate) *with In re Sargente,* 202 B.R. 1023 (Bankr.S.D.Fla.1996) (upon conversion to chapter 7, debtors were permitted to retain equity created by pay down of secured debt during chapter 13).

Congress added [§ 348] to the bankruptcy code in the Bankruptcy Reform Act of 1994 to provide debtors with an additional incentive to reorganize under chapter 13 rather than to immediately liquidate their assets under chapter 7. The legislative history provides the following example of section 348(f)'s underlying purpose:

> For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she had paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

*Warren v. Peterson,* 298 B.R. 322, 324–25 (N.D.Ill.2003) (quoting H.R.Rep. No. 103–835 at 57 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3366).

Congress was concerned that transferring the benefits made by a debtor by diligently making payments under a chapter 13 plan to the unsecured creditors if the case converted to one under chapter 7 "would create a serious disincentive to chapter 13 filings because debtors would fear that property attained after filing, *including equity created by payment of secured debts,* could be lost if the case were converted. The legislative history also states that equity created during the chapter 13 case is not property of the estate." 3 Collier on Bankruptcy ¶ 348.07[1] (15th ed. rev'd 2004) (emphasis added). *See also In re Pearson,* 214 B.R. 156, 164 (Bankr.N.D.Ohio 1997) (discussing legislative history and that general purpose behind § 348(f) was to equalize treatment a debtor would receive if he had filed a chapter 7 originally, including Congress' concern that loss of equity in collateral upon conversion would discourage filings of chapter 13).

The court in *In re Peter* acknowledged that the legislative history to § 348 may support a debtor's position that equity created by payments made during a chapter 13 case does not become property of the estate if the case converted to one under chapter 7. *In re Peter,* 309 B.R. at 794–95. The *In re Peter* court, however, found that there was no ambiguity in § 348 and that a straightforward reading of the language of § 348 did not lead to absurd results. Therefore, the court found that it could not consider the legislative history behind § 348. We disagree.

We find that there is ambiguity in whether the definition of "property of the estate" includes equity. Section 541(6) clearly excludes earnings for debtor's services after commencement of the case and in normal situations where a debtor pur-

chases new assets with those earnings, it would not be argued that those new assets were property of the estate. However, if those earnings are used to "purchase" equity in existing assets, it is not clear from a straightforward reading of § 541 or § 348 whether that new equity is property of the estate. The legislative history to § 348 clearly indicates that it is not.

Based on the foregoing, we conclude that Congress did not intend that a chapter 13 debtor should lose the benefit of any equity accrued in an asset because of said debtor's compliance with the chapter 13 plan payments. As such, we believe the policy of not including such equity in the estate assets at the time of conversion to a chapter 7 is the better view and furthers the policy of encouraging debtors to file chapter 13 cases to attempt to repay their debts.

Accordingly, the Chapter 7 Trustee's Motion is hereby **DENIED**.

**IT IS SO ORDERED.**