**In re John A. PRUNESKIP, Debtor.**

**No. 9:03–bk–01662–ALP.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Feb. 9, 2006.

Timothy W. Gensmer, Sarasota, FL, for Debtor.

### *ORDER DENYING MOTION FOR TURNOVER*

(Doc. No. 59)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case of John A. Pruneski, (the Debtor) is a Motion for Turnover filed by Diane L. Jensen as Trustee (Trustee) in Bankruptcy of the Debtor on October 3, 2005. (Doc. No. 59). In her Motion, the

Trustee request this Court to enter an Order directing the Debtor to turnover his excess, non-exempt assets or to pay the sum of $17,633.59, the value of the assets, within ten (10) days of the entry of the Order. It is the contention of the Trustee that the Debtor exceeds his entitlement to a claim of exemption by $17,633.59, which includes the value of his corporation CPS Marketing Group Inc., two 1998 Ford Winstars, personal property, and excess money in the bank (the Property). A close analysis leaves no doubt that the Trustee does not seek a turnover of the sum of $17,866.59, but merely seeks a payment of the amount paid which is in excess. The Motion as pled fails to specify any amount which is the claimed excess value in the two (2) Ford Winstars, the funds on deposit in the bank and/or the value of the Debtor's corporation.

On oral arguments, the Trustee focused and limited her argument to the claimed excess value of the two (2) automobiles. Both automobiles were claimed as exempt and no doubt should have been claimed as exempt within the provisions of 11 U.S.C. § 722. The Debtor did not respond to the Trustee's Motion however, urged at oral arguments that on the date of the commencement of the case there was no equity in the property, thus, whatever equity might have been built up from the time the Debtor converted his Chapter 13 case to a Chapter 7 case, is not relevant and, therefore, not controlling. The Debtor further argues that the excess amount claimed is exempt from the estate since the value of the property should be determined as of the Chapter 13 Petition date, and not the date the Debtor converted to a Chapter 7 case. On January 5, 2006, this Court held a Pretrial Conference for the limited purpose of resolving when to determine the value of the Debtor's two (2) vehicles, and deciding the date on which the payoff of the vehicle loan should be determined when a case is converted from a Chapter 13 case to a Chapter 7 case.

The facts of this case are undisputed and are as follows. On January 27, 2003, the Debtor filed his voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. In his Schedule B, the Debtor listed as his personal property the following items, which are the items in question: (1) $500.00 in his checking account; (2) his corporation, CPS Marketing Group, Inc., having a current market valued of $4,500.00; and (3) two 1998 Ford Winstars. The Debtor's Schedule D listed Ford Motor Credit as a secured creditor holding a security interest in one of the Debtor's 1998 Ford Winstars, valued by the Debtor at $7,000.00, with Ford Motor Credit's claim listed as $13,026.19. The Debtor's Schedule D further listed Gold Bank as a secured creditor holding a security interest in the Debtor's second 1998 Ford Winstar, valued by the Debtor at $6,000.000, with the Bank's claim listed as $7,179.12. Moreover, Ford Motor Credit filed its claim on March 3, 2003, in the amount of $11,689.06 secured by one 1998 Ford Winstar. In addition, on April 7, 2003, Gold Bank filed their claim in the amount of $6,281.25 secured by one 1998 Ford Winstar. Gold Bank further indicated in their claim that the value of the collateral was $3,000.00

On September 5, 2003, this Court entered its Order Confirming Chapter 13 Plan (Doc. No. 11). On October 22, 2003, the Order Allowing Claims (Doc. No. 17) was entered and provided that the claims of Ford Motor Credit and Gold Bank were allowed, but shall not receive payment from the Chapter 13 Trustee under the Confirmed Plan. On November 13, 2004, the Chapter 13 Trustee filed its Motion to Dismiss Case for Failure to Make Payments (Doc. No. 27). On November 15, 2004, this Court entered its Order on Trus-

tee's Motion to Dismiss Case for Failure to Make Payments and Granting Period to Cure Defaults (Doc. No. 28). On December 27, 2004, the Debtor filed his Motion to Abate Plan (Doc. No. 30), stating that he was unable to come up with the delinquent amount of funds by February 1, 2005. On February 1, 2005, this Court entered its Order Granting Debtor's Motion to Abate Payments (Doc. No. 33).

On March 14, 2005, the Debtor filed his Motion to Convert Chapter 13 to Chapter 7 (Doc. No. 35). On March 16, 2005, this Court entered its Order Governing Procedures After Conversion (Doc. No. 36). On March 16, 2005, the Unites States Trustee appointed Diane Jensen as the Interim Trustee. On April 25, 2005, the Debtor filed his Chapter 7 Individual Debtor's Statement of Intention (Doc. No. 48), reaffirming his debt with both Ford Motor Credit and Gold Bank pursuant to 11 U.S.C. § 524(c). On June 1, 2005, the Trustee filed her Motion for Rule 2004 Examination (Doc. No. 53). On November 3, 2005, the Trustee filed her Motion for Turnover, asserting that the Chapter 7 estate is entitled to the non-exempt equity in the two Ford Winstars that the Debtor had created in the vehicles while the case existed under Chapter 13.

These are the facts in which this Court is called upon for the purpose of determining what date is controlling for valuing the two automobiles. At issue is the application of 11 U.S.C. § 348(f) which provides:

(f)(1) ... when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuation of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan. . . .

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

Section 348(f) was enacted to resolve a split in the law about what property is included in the bankruptcy estate when a debtor converts from Chapter 13 to Chapter 7. In accordance with Section 348(f)(1), the Court of Appeals for the Fifth Circuit held, in *In re Stamm*, 222 F.3d 216 (5th Cir.2000), that postpetition wages in the hands of the Chapter 13 Trustee should be returned to the debtors because they were not part of the Chapter 7 estate. *See In re Zamora*, 274 B.R. 268 (Bankr.W.D.Tex. 2002) (funds remaining in trustee's hands upon conversion belong to the debtor).

The issue as presented to this Court is simply stated, that is, does the Petition date or the conversion date control when determining whether there is equity in the vehicles when a Chapter 13 case is converted to a Chapter 7 case. In the case of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985), the court held that a tort claim, which arose after the debtor filed his petition under Chapter 13, was not property of the estate upon the case being converted to another Chapter. In the case of *In re Sargente*, 202 B.R. 1023 (Bankr.S.D.Fla. 1996), the court held the property of the estate and the debtor's equity in the property of the estate is determined as of the date of the debtor's filing his Chapter 13 petition, and not the date on which the debtor converted to Chapter 7.

The court in the case of *In re Nichols*, 319 B.R. 854 (Bankr.S.D.Ohio 2004) held that it was not the intention of Congress that a Chapter 13 debtor should lose the benefit of equity accrued in an asset because the debtor complied with the Chapter 13 plan payments. Thus, the equity in the collateral, which accrued prior to the conversion to a Chapter 7, did not become property of the debtor's estate following the conversion.

Based on the foregoing, this Court is satisfied that the difference in the two amounts, that is, the value of the asset on the date of filing the Chapter 13 Petition and the value of the asset on the date of conversion to a Chapter 7 case, is due to the payments made by the Debtor outside of the Chapter 13 Plan. Be that as it may, this Court is convinced that the property of the estate and the Debtor's equity in the two (2) 1998 Ford Winstars is determined as of the filing date of the Chapter 13 Petition, and not the date on which the Debtor's case was converted to a Chapter 7 case. Therefore, the Debtor, on the date of filing his Chapter 13 Petition, had no equity in the two automobiles. Thus, the Trustee's is not entitled to turnover of the two 1998 Ford Winstars.

As noted above, the Trustee in her Motion provided this Court with a combination of the Debtor's excess, non-exempt assets totaling the sum of $17,633.59. In her Motion, the Trustee fails to articulate what the equity of the non-exempt assets was on January 27, 2003, the date of the commencement of the Chapter 13 case, nor does the Trustee specify the increase in the equity of the non-exempt assets as of March 16, 2005, the date the case is converted to a Chapter 7 case. Based on the same, this Court is not in the position to determine whether there was equity in the Debtor's corporation, and/or the amount on deposit in the Debtor's bank account on the date the Chapter 13 Petition was filed or on the date of the Chapter 7 conversion. Furthermore, the equity the Debtor acquired in both the bank account and also the corporation, as of the commencement of the Chapter 13 case, did not become property of the Chapter 7 estate upon conversion of the case. Based on the foregoing, the Chapter 7 Trustee is not entitled to the increase in equity since the excess in the non-exempt assets did not become property of the Chapter 7 estate upon conversion of the case. Thus, the Trustee's Motion for Turnover is denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Motion for Turnover (Doc. No. 59) be, and the same is hereby, denied.

DONE AND ORDERED.