**In re Charles Richard MERRITT Kimberly Kay Merritt, Debtors.**

No. 01–33108.

United States Bankruptcy Court, N.D. West Virginia.

June 8, 2006.

Stephen R. Fielder, Bunker Hill, WV, for Debtors.

## *MEMORANDUM OPINION*

PATRICK M. FLATLEY, Bankruptcy Judge.

Charles Richard Merritt and Kimberly Kay Merritt (the "Debtors") filed a motion to compel Helen M. Morris, the Chapter 13 trustee (the "Trustee"), to disburse the non-exempt equity from the sale of the Debtors' real property to them instead of to their unsecured creditors. The Trustee requests that the motion be denied and that the distribution to the Debtors' unsecured creditors be increased from 0% to 100%.

The court held a telephone conference in this matter on May 30, 2006, at which time the court denied the Debtors' motion and approved the disposition of the sale proceeds as outlined by the Trustee. This Memorandum Opinion memorializes the court's ruling.

## I. BACKGROUND

The Debtors filed bankruptcy on September 28, 2001, listing their real property located at 1223 Torytown Road, Bunker Hill, West Virginia as having a value of $115,000, and as being subject to a deed of trust securing about $110,000 of indebtedness. The Debtors' confirmed plan called for the Debtors to retain that property and to make payments directly to the mortgage creditor. Unsecured creditors were to receive a 0% payout under the confirmed plan. According to the court's claim's register, the total claims filed against the estate—secured, priority, and unsecured—are $38,527.

Subsequently, on September 7, 2005, the court approved the sale of the Debtor's real property for $216,000, with the net proceeds to be turned over to the Trustee. After payment of the costs of sale and secured debts, the Debtors requested, and received, $46,690 as the amount of their exemption. On September 14, 2005, the Debtors filed a motion to modify their confirmed plan to, inter alia, "reflect that all claims except administrative claims have been paid in full." Consonant with the motion, the court entered an order on January 19, 2006, providing: "That the Debtors' Chapter 13 Plan be modified to reflect that all claims except administrative claims have been paid in full . . . ."

When the Trustee received the proceeds from the sale of the real estate, the Trustee paid all claims in full and did not abide by the 0% payout to unsecured creditors as contemplated by the original, confirmed plan. Even after paying all claims in full, the Trustee estimates that funds will be available for distribution to the Debtors.

## II. DISCUSSION

The Debtors argue that the proceeds from the sale of their real estate should be used to pay off their original, confirmed plan and that they are entitled to any remaining amount. The Debtors further argue that the language in the order approving their plan modification ("That the . . . Plan be modified to reflect that all claims . . . have been paid in full . . . .") refers only to the original, confirmed plan and that the order granting

modification did not alter the rights of unsecured creditors to receive a 0% distribution. The Trustee contends that the order on modification requires all claims to be paid in full, regardless of the payout contemplated in the Debtors' original, confirmed plan.

◼ Modification of a confirmed plan is generally required when a debtor seeks to sell real property that the debtor had previously sought to retain. *E.g., In re Stinson*, 302 B.R. 828, 832 (Bankr.D.Md.2003) (determining that modification was proper when the debtor sold real property that was to be retained under the terms of the plan). Modification of a confirmed plan is accomplished under § 1329 of the Bankruptcy Code. 11 U.S.C. § 1329. Section 1329(b)(1) provides that § 1325(a)—listing the requirements for confirming a Chapter 13 plan of reorganization—is applicable to a plan modification. Among those requirements is § 1325(a)(4), which provides:

[T]he court shall confirm a plan if—

.    .    .    .    .

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date ....

§ 1325(a)(4).

◼ This section is commonly referred to as the "best interest of the creditors test," meaning that on the effective date of the plan, creditors in a Chapter 13 case must receive at least as much through the plan as they would receive had the debtor's estate been liquidated under Chapter 7 of the Bankruptcy Code. *E.g.,* 8 *Collier on Bankruptcy* ¶ 1325.05[2] (Alan N. Resnick & Henry J. Sommers eds. 15th ed. rev.2006) (describing the "best interest of

the creditors test"). In the context of a plan modification, unless otherwise specified, the effective date of the plan is the date of the plan as modified, and the calculation of the best interest of the creditors test includes, inter alia, the appreciation of a debtor's existing real property from the petition date to the effective date of the plan as modified. 11 U.S.C. §§ 541(a) (listing property of the estate); 1329(b)(2) (stating that "the plan as modified becomes the plan"); *In re Barbosa*, 236 B.R. 540, 552 (Bankr.D.Mass.1999) ("[T]he best interest or liquidation value test of § 1325(a)(4) is applied as of the effective date of the plan as modified."), *aff'd*, 243 B.R. 562 (D.Mass.), *aff'd*, 235 F.3d 31 (1st Cir.2000); Keith M. Lundin, *Chapter 13 Bankruptcy*, § 254–6 (2006) ("[A] majority of reported decisions fix the effective date for best-interest-of-the-creditors test purposes at modification ...."); *Collier on Bankruptcy* ¶ 1325.05[2][a] ("[T]he deemed chapter 7 liquidation which would have produced the cash payment is based upon the value of the nonexempt property in the estate on the date the petition was filed [plus] .... postpetition additions to such property ... that are encompassed within section 541 ....").

Moreover, should a debtor convert to a Chapter 7 case on the date of modification, then § 348(f)(1)(A) states that "property of the estate in the converted case shall consist of property of the estate as of the date of filing the petition, that remains in the possession of is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). In the context of a Chapter 7 case, the trustee is entitled to the benefit of any post-petition appreciation of property. 11 U.S.C. § 541(a)(6) (stating that the bankruptcy estate is comprised of, inter alia, "[p]roceeds ... of or from property of the estate ...."); *In re Reed*, 940 F.2d 1317, 1323 (9th Cir.1991)

("We interpret this language to mean that appreciation enures to the bankruptcy estate, not the debtor."); *Potter v. Drewes (In re Potter),* 228 B.R. 422, 424 (8th Cir. BAP 1999) ("Nothing in Section 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing. . . . Except to the extent of the debtor's potential exemption rights, post-petition appreciation in the value of property accrues for the benefit of the trustee."); *In re Paolella,* 85 B.R. 974, 977 (Bankr.E.D.Pa.1988) ("Because a sale does not generally, if ever, occur simultaneously with formation of a bankruptcy estate, § 541(a)(6) mandates that the estate receive the value of the property at the time of the sale. This value may include appreciation or be enhanced by other circumstances creating equity which occur postpetition.").

For the court to modify the debtor's plan, it had to find that the plan, as modified, met the best interest of the creditors test of § 1325(a)(4). On the effective date of the plan, as modified, the Debtors had substantial equity in their property beyond the amount of their applicable exemptions, which in a Chapter 7 case, would have paid all creditors in full. Because § 1325(a)(4) is a requirement to approving a plan modification, the court interprets its January 16, 2006 order of modification ("That the . . . Plan be modified to reflect that all claims . . . have been paid in full . . . .") to mean that all filed claims must be paid in full—not that all filed claims as contemplated by the original, confirmed plan must be paid.

### III. CONCLUSION

For the above-stated reasons, the court will deny the Debtors' motion to compel turnover of the entire amount of the non-exempt proceeds from the sale of their real estate. The court will enter a separate order pursuant to Fed. R. Bankr.P. 9021.