In re Timothy Alan JOHN & Cheryl Stilwell John, Debtors.

No. 03–70514 LMK.

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

Oct. 4, 2006.

Allen P. Turnage, Tallahassee, FL, for Debtors.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO COMPEL TURNOVER

LEWIS M. KILLIAN, JR., Bankruptcy Judge.

THIS MATTER came before the Court for hearing August 18, 2006 on the Chapter 7 Trustee's Motion to Compel Turnover of Personal Property (Doc. 89). The Chapter 7 Trustee brought the motion after being appointed to this case when the Debtors voluntarily converted from Chapter 13 to Chapter 7. As a consequence of conversion, the newly-appointed Chapter 7 Trustee became obliged to collect the estate's property under 11 U.S.C. § 704(a)(1). To this end, the Trustee now seeks turnover of property scheduled in the original Chapter 13 petition, alleging that such property belongs to the estate in the Chapter 7 case. The question for this Court is whether the property scheduled by the Debtors in their original Chapter 13 petition is property of the estate in the case converted to Chapter 7 and thus subject to liquidation. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(b)(2)(E), and 1334. For the reasons set forth more fully herein, and despite the Debtors' arguments to the contrary, the motion shall be granted because the property sought by the Trustee is property of the estate according to 11 U.S.C. § 348(f)(1)(A). Having read the pleadings, having heard the argument of counsel, and being otherwise advised, I make the following findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## FACTS

The Debtors filed their voluntary Chapter 13 petition on May 2, 2003. Their schedules included $3,660 worth of certain unencumbered, nonexempt, personal property (the Property), which is at issue in this case.[1] After the Chapter 13 plan was confirmed on October 29, 2003, the Debtors retained possession of the Property and made substantial payments to the Trustee pursuant to the plan: $62,708 was paid into the plan, over $42,000 of which was distributed to unsecured creditors. Eventually, however, the Debtors defaulted on their payments, and they voluntarily converted the case to one under Chapter 7 on February 20, 2006.

The Chapter 7 Trustee now seeks turnover of the Property scheduled by the Debtors in their original petition. The Debtors respond that the Property is no longer property of the estate because it "vested in the Debtors upon confirmation of their plan" in Chapter 13, and therefore the estate has no interest in the Property the Trustee now seeks to administer. Debtor's Brief (Doc. 93); *See* 11 U.S.C. § 1327(b). The Trustee argues that this case is controlled by 11 U.S.C. § 348(f)(1)(A), which provides that property of the Chapter 7 estate consists of property of the estate on the date of petition that remains in the possession of the debtor at the time of conversion. The Debtors counter in the alternative that any interest the Trustee might have had in the Property has been satisfied by their payments under the Chapter 13 plan. While one might think a fact pattern of this sort would be simple and routine, this Court has been unable to find any reported cases directly on point in its own research.

---

1. The Trustee is seeking turnover of the Property, including the Debtors' clothes, jewelry, household goods, handtools, and even the family dog.

## ANALYSIS

A debtor may convert a case from Chapter 13 to Chapter 7 at any time. 11 U.S.C. § 1307(a). Conversion of the case constitutes an order for relief under Chapter 7 and terminates the service of the Chapter 13 Trustee. 11 U.S.C. §§ 348(a) and (e). Consequently, a new Trustee is appointed to proceed with the case under Chapter 7. 11 U.S.C. § 701(a)(1). The Chapter 7 Trustee is then statutorily obligated to perform certain duties, such as collecting the property of the estate and reducing it to money. § 704(1). To carry out this task, the Trustee must ascertain the property that should be included as "property of the estate" in the Chapter 7 case.

 Property of the estate in a case converted to Chapter 7 from Chapter 13 is comprised of property of the estate as of the date the petition was filed that remains in the possession or control of the debtor on the date of conversion. 11 U.S.C. § 348(f)(1)(A). Property of the estate in a case converted from Chapter 13 to Chapter 7 has two characteristics: (1) the property must have been property of the estate on the date of petition; and, (2) the property must have remained in the possession or control of the debtor on the date of conversion. *Id.* In other words, property of the estate in the Chapter 7 case "is determined according to the filing date of the original Chapter 13 petition." *In re Stamm,* 222 F.3d 216, 218 (5th Cir.2000) (quoting *In re Alexander,* 239 B.R. 911, 916 (8th Cir. BAP 1999)). Section 348(f)(1)(A) creates a continuity such that property of the estate on the date that the original Chapter 13 petition was filed becomes property of the estate in the case converted to Chapter 7, provided that it is still in the possession or control of the debtor. *See In re Bracewell,* 454 F.3d 1234, 1239 (11th Cir.2006) (noting that the concept of property of the estate is tempo-ral in nature). Put differently, property is not property of the estate in the converted case if it is acquired by the debtors after the date of petition, or it is not in their possession or control on the date of conversion. Property of the estate on the date of petition includes all legal or equitable interests of the debtor as of that date, among other interests in property. 11 U.S.C. § 541(a)(1).

In this case, the Trustee seeks turnover of Property which the Debtors owned on the date of petition. The Debtors listed the Property in Schedule B of their original Chapter 13 petition. In their brief and in open court, the Debtors have asserted that the Property at issue should "no longer" be considered property of the estate, and that such Property remained in the Debtors' possession on the date of conversion. *See* Debtor's Brief (Doc. 93). Thus, on the date that the original Chapter 13 petition was filed, the Property was in fact property of the estate, and the Property seems to have remained in the Debtors' possession on the date that the case was converted to Chapter 7. To the extent that it did remain in the possession of the Debtor on the date of conversion, it is clear that the Property the Trustee seeks in her motion is property of the estate in the converted Chapter 7 case. *See* 11 U.S.C. § 348; *Wegner,* 243 B.R. 731, 734 (Bankr.D.Neb.2000) (concluding summarily that, upon conversion, a homestead owned by the debtors at the time of petition which remained in their possession at the time of conversion was property of the estate in the converted case).

## DISCUSSION

 The Debtors have advanced several arguments to avoid this result. For example, they refer to 11 U.S.C. § 1327 to support the assertion that, since the Property at issue vested in the Debtors under

the Chapter 13 plan, it is not part of the converted estate and therefore the Trustee has no interest in such Property. This argument is meritless. The Debtors are correct that the Property did indeed vest in the Debtors upon confirmation of their plan—in Chapter 13. 11 U.S.C. § 1327(b). However, this is no longer a Chapter 13 case. Once a case is converted from Chapter 13 to Chapter 7, the provisions of Chapter 13 that define the effect of a plan's confirmation have no application in determining the composition of the Chapter 7 estate. *Compare* § 348 *with* § 1327.[2] It is elementary that, upon conversion, the provisions of the chapter to which the case is converted apply, while the provisions of the chapter from whence it came cease to be determinative, unless the Code provides otherwise. That is the whole concept of conversion. Moreover, reading § 1327 as determining the property of the estate after conversion to Chapter 7 would render § 348 entirely superfluous.

■ Another argument the Debtors seem to have made is that the Property the Trustee now seeks is no longer property of the estate because the payments made under the Chapter 13 plan somehow transformed it into property acquired after the date of petition. In other words, the Debtors argue that they should retain some present interest in the prior payments they made into the plan. There is no basis in either the Bankruptcy Code or the case law for such a proposition. Nonetheless, the Debtors cite several cases for support. For example, they cite *In re Page*, 250 B.R. 465 (Bankr.D.N.H.2000), which concluded that § 348 requires the valuations of property in the Chapter 13 case to apply in the case converted to Chapter 7 and held that any amount that real property appreciates after filing the Chapter 13 petition does not become prop-

erty of the estate in the case converted to Chapter 7 because the amount of appreciation is in the nature of property acquired post-petition. *Page* 250 B.R. at 466. *Page* does not apply to this case since the Property here did not appreciate.

■ Besides, the Property here was not acquired post-petition, and the payments made under the Chapter 13 plan did not function to transform the Property into property acquired post-petition. After the funds generated by a debtor's Chapter 13 plan payments are distributed to creditors, the payments can be neither disgorged nor revoked retroactively. *See In re Richardson*, 20 B.R. 490, 492 (Bankr.W.D.N.Y. 1982); *In re Bell*, 248 B.R. 236, 239–40 (Bankr.W.D.N.Y.2000); *In re O'Quinn*, 143 B.R. 408, 413 (Bankr.S.D.Miss.1992); *cf. In re Stamm*, 222 F.3d 216, 216 (5th Cir.2000) (making clear that no Chapter 13 plan was confirmed in that case, so none of the money paid to the Trustee should have been distributed to creditors); *In re Del Castillo*, 273 B.R. 677, 678–79 (Bankr. M.D.Fla.2002) (basing its reasoning on the fact that no plan was confirmed and no payments had been distributed to creditors). Moreover, a confirmed plan is binding on the debtor and creditors. 11 U.S.C. § 1327(a). In this case, the payments made to the Trustee were distributed to creditors pursuant to a confirmed plan; the Debtors have no present interest in the past payments they made into the plan.

The Debtors also point to *In re Rangel*, 233 B.R. 191 (Bankr.D.Mass.1999). The Debtors' reference to *Rangel* is somewhat mystifying since that case has very little to do with conversion at all and, if anything, seems to be contrary to the Debtors' position. *See Rangel*, 233 B.R. at 197 (stating that the "post-conversion estate contains

2. Section 1327 does not address conversion or its effect on the property of the estate.

the estate property as of the date of the petition's filing ..." under § 348(f)(1)(A).) *Rangel* simply analyzes whether a debtor's homestead remains property of the estate after confirmation of a plan in Chapter 13 when there is no conversion. *See Rangel*, 233 B.R. at 192–93, 197–98. In *dicta*, § 348 is merely mentioned in passing as support for the proposition that "property of the estate exists post-confirmation" in Chapter 13. *Id.* at 197. Ultimately, *Rangel* concluded that—in Chapter 13—property of the estate vests in the debtor and is no longer property of the estate upon confirmation; then, § 1306(a) replenishes the estate post-confirmation with the debtor's earnings. *Id.* at 197–98 (citing *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D.Ill.1997)). Therefore, the debtor in *Rangel* was not required to file an application to hire a broker to sell the debtor's homestead since the homestead had vested in the debtor and was no longer property of the estate. *Id.* at 198. There is nothing in the facts or holding of *Rangel* that has anything to do with conversion, and it does not apply to the case at bar. When a case is converted from Chapter 13 to Chapter 7, § 348 applies to define the property of the estate. 11 U.S.C. § 348(f)(1)(A).

The Debtors reliance on *In re Woodland*, 325 B.R. 583 (Bankr.W.D.Tenn.2005) is similarly misplaced. *Woodland* held that equity created by virtue of Chapter 13 plan payments did not become property of the Chapter 7 estate upon conversion because, essentially, it was property acquired after the petition and commencement of the case. It seems to be a fairly well-accepted proposition that property acquired after the date of petition is not property of the estate "as of" the date of petition; since it was not property of the estate "as of" the petition date, it cannot later become property of the estate in the converted case. *See* 11 U.S.C.

§§ 348(f)(1)(A) and 541(a)(1); *but see* 11 U.S.C. § 541(a)(5). Several courts have concluded that equity acquired by virtue of plan payments or appreciation over the life of a Chapter 13 plan is "after-acquired" property and therefore would not be property of the estate in the case converted to Chapter 7. *Woodland*, 325 B.R. at 586, *and In re Page*, 250 B.R. 465 (Bankr.D.N.H. 2000), *and In re Nichols*, 319 B.R. 854, 857 (Bankr.S.D.Ohio 2004), *and In re Pruneskip*, 343 B.R. 714 (Bankr.M.D.Fla.2006), *and In re Niles*, 342 B.R. 72 (Bankr. D.Ariz.2006). However, other courts disagree. *In re Peter*, 309 B.R. 792 (Bankr. D.Or.2004) (holding that equity created in a nonexempt, encumbered motor vehicle by virtue of payments under the Chapter 13 plan did indeed become part of the Chapter 7 estate), *and In re Merritt*, 344 B.R. 785, 787 (Bankr.N.D.W.Va.2006) (concluding that equity resulting from the appreciation of real property was in the nature of "proceeds, product, offspring, rents, or profits of the estate" under 11 U.S.C. § 541(a)(6) and therefore would have been property of the Chapter 7 estate). Equity created in property by virtue of payments made under a Chapter 13 plan (or by virtue of appreciation) might be viewed as property acquired after the date of petition. However, that issue is not before this Court. Assuming they were correctly decided, *Woodland, Nichols, and Pruneskip* all deal with equity the debtors acquired by virtue of Chapter 13 plan payments after petition and confirmation. *See generally, e.g., Woodland.* In contrast, the Chapter 13 plan payments in this case did not create any equity in the Property. As there has been no equity created or acquired in this case, it follows that *Woodland* does not apply.

It is important to note that all of these arguments are a bit of a distraction in this case. The Property at issue is not the

wages earned by the Debtors or the Chapter 13 plan payments; rather, it is the nonexempt, personal Property owned by the Debtors at the time of petition and which allegedly remained in their possession at the time of conversion. Since such Property is property of the estate, the Trustee is required by statute to pursue to it and reduce it to money. *See* 11 U.S.C. §§ 348(f)(1)(A) and 704(1).

■■■ The Debtors insist that this result is unfair, and that this Court should use its powers under § 105 to reach a result that would seem more equitable to them. *See* 11 U.S.C. § 105(a). The Debtors have stressed that conversion in this case was due to the Debtors' loss of income stemming from circumstances beyond their control. Allowing the Chapter 7 Trustee to compel turnover of the Property in this case might seem inequitable to the Debtors at first blush. However, such circumstances are addressed by the "hardship discharge" provision of 11 U.S.C. § 1328(b). Section 348 must be read in light of § 1328(b) since the Bankruptcy Code in its entirety is a comprehensive statutory scheme, the provisions of which should read in context as an integrated whole. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *In the Matter of Howard,* 972 F.2d 639, 640 (5th Cir.1992).

■■ Section 1328(b) makes it clear that, if the unsecured creditors have received what they would have been paid in a Chapter 7 liquidation (as it appears they have), and the Debtors' inability to complete payments is due to circumstances for which they should not be justly held accountable, then the Debtors are entitled to a hardship discharge if modification of the plan is impracticable. 11 U.S.C. § 1328(b). This

Court in *In re Edwards,* 207 B.R. 728 (Bankr.N.D.Fla.1997) set forth a fairly low bar for debtors seeking to receive a hardship discharge and made clear that "catastrophic circumstances" are not necessary under § 1328(b). A hardship discharge will be granted by this Court

> [w]here a debtor is unable to complete payments under a Chapter 13 plan due to economic circumstances that did not exist nor were foreseeable at the time of confirmation of the plan, where those circumstances are beyond the debtor's control, and where the debtor has made every effort to overcome those circumstances but is unable to complete his plan payments....

*Edwards,* 207 B.R. at 731.

If a hardship discharge is not appropriate, it is because either the economic circumstances which led to the Debtors' inability to complete the plan payments were foreseeable at the time the plan was confirmed, those circumstances were within the Debtors' control, or the Debtors have not made every effort to overcome those circumstances. The Debtors' decision to pursue conversion under §§ 1307(a) and 348 implies that they do not qualify for a hardship discharge under § 1328(b). The Debtors' choice to convert rather than request a hardship discharge suggests that perhaps the failure to complete the Chapter 13 plan was not in fact due to circumstances which were unavoidable. Such a situation substantially undermines the equitable arguments in this case.

■■■ The Debtors maintain nonetheless that they have paid for this Property over ten times through the Chapter 13 plan and it would therefore be inequitable to force them to pay yet again by way of the forced turnover the Trustee seeks. The Debtors' argument fails to appreciate the nature of Chapter 13. Though intui-

tively it may seem that the Debtors' conversion in this case has resulted in them losing the benefit of their bargain in Chapter 13, one must consider the nature of the bargain that was struck, the context of Chapter 13, and how Chapter 13 fits within the structure of the Code as a whole. *See Timbers,* 484 U.S. at 371, 108 S.Ct. 626; *Kelly,* 479 U.S. at 43, 107 S.Ct. 353; *Howard,* 972 F.2d at 640. Chapter 13 is essentially a court-supervised bargain brokered between debtors and their creditors with the assistance of the Trustee. *See In re Golek,* 308 B.R. 332, 338–39 (Bankr. N.D.Ill.2004). In exchange for giving up their right to future earnings under 11 U.S.C. §§ 541(a)(6), 1306, 1322, and 1326, debtors gain many benefits in Chapter 13. *See id.* For example, Chapter 13 provides debtors with the opportunity to obtain a "super-discharge" of debts, to retain all property of the estate, to modify the rights of secured creditors, and to cure and reinstate mortgages. *See* 11 U.S.C. §§ 1328, 1327, 1322(b)(2), and 1322(b)(3) and (5), respectively. These benefits offer a considerable incentive for an individual debtor to comply with the requirements of the confirmed plan, and when debtors fail to live up to their end of the deal, the bargain can be called off and the case converted or dismissed. 11 U.S.C. § 1307(c). Considering the substantial benefits Chapter 13 debtors enjoy in exchange for paying their wages into the Chapter 13 plan, a debtor who fails to make the required payments should not be able to keep what was bargained for when the creditors do not get what is due.

 In a similar vein, the Debtors have argued that they have "satisfied the Trustee's inchoate lien rights under 11 U.S.C. § 544" and, effectively, the Property at issue has been redeemed. The fallacy of this argument is two-fold. First, there is no support in the law for the notion that the Trustee has a lien on the Property. *See* 11 U.S.C. § 544. Section 544 only gives the Trustee the "rights and powers of" a creditor with a perfected lien on all of a debtor's lienable property. That is, the Trustee has the power of a lien creditor without actually having a lien. *See id.* Since the debt in this case is not secured by a lien on the Property, there was no lien for the Debtor's Chapter 13 plan payments to satisfy.[3] Second, in Chapter 7, when a debtor redeems property, the debtor uses funds (i.e., wages) that are not part of the Chapter 7 estate; however, in Chapter 13, post-petition wages are property of the estate. *Compare* 11 U.S.C. §§ 541(a)(6) *with* 1306(a)(2). Even if the Trustee had a lien, the Debtors would not be able to satisfy it by using property that belongs to the estate.

 Finally, it has been suggested that the Court's conclusion in this case is contrary to Congressional policy and the legislative history that accompanied the enactment of Chapter 13. It is true that Congress's policy in enacting Chapter 13 was to encourage debtors to repay their debts and enables them to do so with a court-supervised payment plan. *See, e.g., In re Hobday,* 4 B.R. 417, 419 (Bankr. N.D.Ohio 1980). According to the legislative history of the 1994 amendments to § 348(f), Congress took the view that debtors should not be penalized "for attempting and failing in a Chapter 13 case." *In re Woodland,* 325 B.R. 583, 585–86 (Bankr. W.D.Tenn.2005) (quoting 140 Cong. Rec. H10, 752). Of course, debtors will be nei-

---

**3.** Furthermore, redemption is possible under 11 U.S.C. § 722 only when there is a debt secured by a lien, and 11 U.S.C. § 348(f)(1)(B) specifically and explicitly treats secured claims differently from unsecured claims according to the doctrine *expressio unius est exclusio alterius.*

ther penalized for nor discouraged from filing Chapter 13 in cases like the one at bar because § 1328(b) provides relief for debtors who try to repay their debts under a Chapter 13 plan but are unable to do so successfully for reasons they should not be justly held accountable. *See* 11 U.S.C. § 1328(b)(1).

Be that as it may, legislative history and congressional policy are helpful guides to determining the intent of Congress only when a statute is unclear or ambiguous. In this case, however, the intent of Congress is clear, the language is unambiguous, and application of the statute's text to the facts of this case does not lead to an absurd result. Legislative history and the apparent policy Congress sought to advance cannot overcome the clear command of unambiguous statutory text unless the result reached is absurd. It is not for this Court to "improve" upon the legislation written by Congress.

### CONCLUSION

A debtor may choose to convert rather than complete the Chapter 13 plan, modify it, or seek a hardship discharge. 11 U.S.C. § 1307(a). In the end, the outcome of a given case may be the same regardless of which route is chosen. However, the consequences attendant upon conversion under §§ 1307(a) and 348 will differ from those of a hardship discharge under § 1328(b). Debtors must recognize that, upon conversion from Chapter 13 to Chapter 7, a new trustee is appointed who must collect the property of the estate and reduce it to money; under § 1328(b), in contrast, discharge is granted without further administration when the requirements for hardship are met. *Compare* 11 U.S.C. §§ 348 and 704 *with* 1328(b). Sometimes, such consequences may make no difference in the end result. But not always. Debtors have a large amount of control over the direction of their cases, and they must carefully consider the consequences of the options available before embarking on a strategic course.

In this case, it was the Debtors who chose to convert to Chapter 7 rather than pursue a hardship discharge under § 1328(b). One consequence of this choice was that § 348 became controlling as to the definition of the property of the estate. Accordingly, property of the estate includes the personal property the Debtors owned at the time of petition if, and only if, such property remained in the possession or control of the Debtors on the date of conversion. To the extent the Property sought by the Trustee is not the same as that listed on the Debtors' schedules (and therefore is not the same as the property of the estate on the date the original petition was filed), it is not property of the estate in the converted case. *See* § 348(f)(1)(A). The value of any Property that is subject to turnover shall be determined according to its present value since that is all the Trustee could realize from its liquidation today. Thus, if the Trustee consents to allowing the Debtors to retain the Property by repurchasing it from her, the repurchase price shall be the value of the Property today.

The Court will enter a separate order consistent with this opinion.

DONE and ORDERED.