In re Timothy **ROBINSON** and, Julianna Robinson, Debtors.

No. 3:07–bk–0310–JAF.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 3, 2012.

Douglas C. Higginbotham, Jacksonville, FL, for Debtors.

## ORDER DENYING CHAPTER 7 TRUSTEE'S MOTION TO COMPEL DEBTORS TO TURNOVER PROPERTY TO THE TRUSTEE

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court on the Chapter 7 Trustee's Objection to Debtors' Amended Claimed Exemptions (Doc. 142; *see also* Doc. 138)[1] and Motion to Compel Debtors to Turnover Property to the Trustee (Doc. 139). A hearing was held on April 3, 2012. At the hearing, the parties informed the Court that the Trustee's Objection to Debtors' Amended Claimed Exemptions (Doc. 142) had been resolved, and that the only matter remaining for the Court's determination would be the Motion to Compel Debtors to Turnover Property to the Trustee (Doc. 139).

At the conclusion of the hearing, the Court took the matter under advisement and invited the parties to submit additional briefing. In accordance therewith, the parties each submitted a memorandum of law in support of their respective position(s) (Docs. 174, 175). For the reasons that follow, the Court finds the Trustee's Motion to Compel Turnover of Property to the Trustee (Doc. 139) is due to be denied.

## I. Background

Debtors initially filed this case on January 26, 2007 pursuant to Chapter 13 of the Bankruptcy Code. In their Confirmed Chapter 13 Plan, the Debtors proposed to pay off liens on two vehicles (a 2004 Pontiac and a 1999 Lincoln). At the time of the initial filing of the petition, the Debtors had no equity in either vehicle, *supra*. For approximately four and one-half years, the Debtors made payments under the Chapter 13 Plan. On September 12, 2011, however, the Debtors converted their Chapter 13 case to one under Chapter 7.

Due to the payments made under the Chapter 13 Plan, the Debtors acquired equity in the subject vehicles. The Trustee maintains such post-petition accumulated equity (to the extent it exceeds any applicable exemptions) is property of the Chapter 7 estate pursuant to 11 U.S.C. § 348(f) (Doc. 175 at 2–6). For their part, the Debtors disagree.

## II. Analysis

The issue is whether the accumulated equity in the subject collateral, acquired by payments made pursuant to Debtors' Chapter 13 Plan, is now property of the converted Chapter 7 estate. The Court finds it is not.

Section 348(f) provides, in pertinent part, as follows:

1. As the Debtors amended their claimed exemptions, the Trustee's objection to the prior claimed exemptions (Doc. 138) is deemed moot.

When a case under chapter 13 of this title is converted to a case under another chapter under this title—

> (1)(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; [ ... ]
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(1)(A), (f)(2).

The case law on this issue is split. *Compare, e.g., In re Wegner*, 243 B.R. 731, 734–37 (Bankr.D.Neb.2000) and *In re Peter*, 309 B.R. 792, 795 (Bankr.D.Or.2004) (finding equity resulting from Chapter 13 payments is included in the converted Chapter 7 estate) *with In re Sargente*, 202 B.R. 1023, 1026 (Bankr.S.D.Fla.1996) and *In re Pruneskip*, 343 B.R. 714, 717 (Bankr. M.D.Fla.2006) (finding equity resulting from Chapter 13 payments is not included in the converted Chapter 7 estate). The Court finds the greater weight of authority, and the legislative intent, supports the Debtors' position that the subject accumulated equity is not part of the converted Chapter 7 estate.[2]

For instance, in a Middle District of Florida case, *In re Pruneskip, supra*, the Honorable Alexander L. Paskay found the post-petition, accumulated equity in two automobiles, acquired pursuant to payments made outside of the Chapter 13 plan, did not enure to the benefit of the converted Chapter 7 estate. 343 B.R. at 717.[3] Citing *In re Nichols*, 319 B.R. 854 (Bankr.S.D.Ohio 2004), Judge Paskay, reasoned that it was not the intention of Congress that a Chapter 13 debtor should lose the benefit of equity acquired in an asset because the debtor complied with Chapter 13 payments. *In re Pruneskip*, 343 B.R. at 717.

Indeed, section 348 was added to the bankruptcy code in the Bankruptcy Reform Act of 1994 in order to provide debtors with an additional incentive to reorganize under Chapter 13 rather than to immediately liquidate their assets pursuant to Chapter 7. The legislative history of the 1994 amendments to section 348(f) indicates that debtors are to be encouraged to make payments in Chapter 13 rather than filing under Chapter 7, and that they should not be penalized for attempting to repay their debts in Chapter 13 even though they may later find it necessary to convert to a Chapter 7 case. *Burt v. Burt (In re Burt)*, Adv. No. 09–40016–JJR, 2009 WL 2386102, at *2–6 (Bankr.N.D.Ala. July 31, 2009).

The legislative history provides the following example of Congress' concern that any loss of equity in collateral upon conversion to a case under Chapter 7 might discourage Chapter 13 filings:

> For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she had paid off a $10,000 second mortgage in the chapter 13 case, creat-

---

2. There is no binding precedent from either the Supreme Court of the United States or the Eleventh Circuit Court of Appeals; therefore, the Court may rely on persuasive authority in making its determination(s) in this regard.

3. It should be noted that it made no difference to Judge Paskay whether such payments were made pursuant to, or outside of, the Chapter 13 plan. *See id.*

ing $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

*In re Nichols,* 319 B.R. at 856 (quoting H.R.Rep. No. 103–835 at 57 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3366). Further support for Congress' intent in this regard is indicated by subsection (f)(2), *supra,* which provides that if it is found a debtor converted his or her case from Chapter 13 to Chapter 7 "in bad faith," then the property of the estate in the converted case is determined as of the date of conversion. 11 U.S.C. § 348(f)(2). The import being, *inter alia,* that as a consequence of converting in bad faith, the debtor will lose the benefit of any equity accumulated by way of his or her Chapter 13 payments.

In sum, the statutory scheme of 11 U.S.C. § 348(f) indicates that the relevant date for determining property of the Chapter 7 estate after conversion from Chapter 13 is the original filing date. In this instance, at the time of their filing of the petition, the Debtors had no equity in either vehicle. The accumulated equity in the subject automobiles, acquired by payments made pursuant to Debtors' Chapter 13 Plan, is not property of the Chapter 7 estate pursuant to 11 U.S.C. § 348(f).

### III. Conclusion

Based on the foregoing, the Court finds Congress did not intend that a Chapter 13 debtor should lose the benefit of equity acquired in an asset due to his or her compliance with Chapter 13 payments. The policy of encouraging debtors to file Chapter 13 cases in order to attempt to repay their debts is better served by not including such equity in the converted Chapter 7 estate. Accordingly, it is **ORDERED:**

The Trustee's Motion to Compel Debtors to Turnover Property to the Trustee (Doc. 139) is denied.